Argued and submitted June 19, 1992, reversed and remanded in part for modification on appeal, and otherwise affirmed; affirmed on cross-appeal March 17, reconsideration denied May 12, petition for review denied June 22, 1993 (317 Or 163)

Roy B. THOMPSON,
*Appellant - Cross-Respondent,*

*v.*

BOLLIGER, HAMPTON & TARLOW,
a professional corporation,
*Respondent - Cross-Appellant.*

(C 88 0560CV; CA A67501)

849 P2d 526

Anne Whelan Thompson, Portland, argued the cause for appellant - cross-respondent. With her on the briefs was Leiberan and Gazeley, Portland.

Harlan E. Jones, Portland, argued the cause for respondent - cross-appellant. With him on the briefs was Bolliger, Hampton & Tarlow, Portland.

Before Rossman, Presiding Judge, and De Muniz and Landau,* Judges.

LANDAU, J.

---

\* Landau, J., *vice* Buttler, J., retired.

## LANDAU, J.

Plaintiff appeals from a judgment in an action for recovery of unpaid wages, penalties and amounts due under a shareholder's contract. Defendant cross-appeals. We affirm in part and reverse in part on the appeal, and affirm on the cross-appeal.

Plaintiff, an attorney, joined defendant law firm on July 1, 1987, as one of four 25-percent shareholders of a professional corporation. In the "Agreement Re Corporation" (Agreement), plaintiff promised to contribute to the corporation tangible assets having a net fair market value of $2,160 and the accounts receivable (and their proceeds) from his prior law practice, when they became available.[1] The parties agreed that the maximum value of the contribution would be $43,334. The Agreement includes three "schedules" that address various forms of "compensation" to the shareholders and to the corporation's employees. Schedule A provides a formula to calculate amounts to be paid to a shareholder or his estate when he dies, is terminated or withdraws from the corporation. Schedule B provides for "Shareholder Compensation for the quarter 10/1/87 - 12/31/87." Schedule C provides that, when the corporation received payment on two accounts identified as "McFadden Estate" and "Traub Estate," it would apply specified amounts of the proceeds to pay staff bonuses, and other amounts would be applied to repay obligations to the shareholders. Schedule D provides for payments to be made to a shareholder who withdraws from the corporation.

Plaintiff left the firm late in February, 1988. The remaining shareholders then voted not to distribute any Schedule B compensation for that month to any shareholders, including plaintiff. Defendant provided plaintiff an accounting that showed the amount it thought he should receive as a withdrawing shareholder under Schedule D, but it paid him nothing.

Plaintiff filed this action for unpaid wages, penalties and for breach of contract. The case was tried to the court

---

[1] Plaintiff's right to those accounts and proceeds was then the subject of another legal action that was not resolved until after plaintiff stopped his association with defendant.

without a jury. The trial court held that plaintiff was not an employee and, therefore, was not entitled to the unpaid wages and penalties and fees requested. The court also said that defendant had not breached the Agreement. The court, nevertheless, directed that each of the parties pay the other certain sums under the agreement and entered judgment accordingly.

Plaintiff's first four assignments of error concern the trial court's conclusion that plaintiff was not an "employee." ORS 652.210(2) defines "employee" as

> "any individual who, otherwise than as a copartner of the employer or as an independent contractor, renders personal services wholly or partly in this state to an employer who pays or agrees to pay such individual at a fixed rate."

Although, strictly speaking, ORS 652.210(2) does not apply in actions for unpaid wages,[2] the Supreme Court has held that the definition is relevant. *Lamy v. Jack Jarvis & Company, Inc.*, 281 Or 307, 574 P2d 1107 (1978). Whether a person is an "employee" within the meaning of the statute is a question of law, as long as the underlying historical facts are not in dispute. *Wells v. Carlson*, 78 Or App 536, 539, 717 P2d 640 (1986).

The parties do not appear to dispute the trial court's findings concerning this issue. Plaintiff argues that he was an employee, because there was no evidence that he was a copartner and because he received paychecks at a fixed rate of $5,500 per month. Plaintiff also relies on *Wyss v. Inskeep*, 73 Or App 661, 699 P2d 1161, *rev den* 300 Or 64 (1985), which he characterizes as standing for the broad proposition that a shareholder who works for a corporation is an employee.

Defendant argues that plaintiff was not its employee, because he was a copartner within the meaning of the statute and because, notwithstanding the uniform amount of monthly compensation plaintiff actually received, the Agreement did not provide for compensation at a fixed rate. Defendant asserts that this court's opinion in *Wyss* is simply wrong, and that, instead, the issue is resolved by the Supreme

---

[2] Plaintiff brings his claim for unpaid wages under ORS 652.140, ORS 652.150 and ORS 652.200. The definition of "employee" found at ORS 652.210, however, expressly applies only to ORS 652.210 to ORS 652.230.

Court's earlier decision in *Lamy v. Jack Jarvis & Company, Inc., supra*, in which the court held that a shareholder was not an employee. Plaintiff counters that it is *Lamy* that must be disregarded, in light of this court's decision in *Wyss*.

Both parties miss the point of those authorities. They are not irreconcilable. They reached different results because they involved different facts. In both cases, the courts held that the substance of the employment relationships, as evidenced by the relevant contracts, controlled.

In *Lamy*, the plaintiff was the vice-president and a substantial shareholder of the defendant, a Subchapter S corporation. The parties had signed a shareholders' agreement, which provided:

> " 'In the event of withdrawal by any shareholder, he agrees to satisfactorily complete all existing assignments for which he has been given budget responsibility. In the event he fails to complete any such assignment, he shall be liable to [the company] for all sums expended by the Company to satisfactorily complete said project.' " 281 Or at 310.

When the plaintiff later decided to resign from the corporation, the other shareholders asked him to continue working for two days to complete a project in progress. He did the work, but there followed a dispute as to whether the plaintiff had worked those two days as a copartner or as an employee. The Supreme Court held that the shareholders' agreement defined the nature of the working relationship. It held that the agreement provided for the sharing of profits and losses of the corporation and that the plaintiff worked without any supervision from the other shareholders. Those, the court held, are key elements of a partnership. There was no dispute that, when the plaintiff worked the two additional days, he did so to fulfill his duties under the shareholders' agreement. Therefore, the court concluded, his continued work was as a copartner, not as an employee. 281 Or at 313-14.

In *Wyss*, the plaintiff was a Senior Vice-President and major shareholder of the defendant corporation. The terms of his employment with the corporation were defined by contract, which provided for a fixed annual salary. During his employment with the corporation, the Board of Directors

adopted a management bonus plan, which provided for distributions from a bonus pool. When the plaintiff left the corporation, he received no bonus, and he sued for breach of contract and for penalty wages and attorney fees. The trial court granted summary judgment for the defendant corporation on the claim for penalty wages and fees on the ground that the plaintiff, as a shareholder, was not an employee. We reversed, holding that it is not the status of an individual as a shareholder that defines the nature of an employment relationship; instead, the terms of employment in the applicable agreement control. We noted that the plaintiff had been paid as an employee under the terms of his agreement with the defendant corporation and concluded that, as a result, the trial court had erred in granting summary judgment for the defendant. *Wyss v. Inskeep, supra*, 73 Or App at 671.

■ The outcome of this case also turns on the contract under which plaintiff claims compensation. Schedule B of the Agreement addresses the compensation of shareholders. It does not mention the compensation of other people who work for the firm. It provides lump sum projections of total compensation for each shareholder for a fiscal quarter. As a matter of practice, defendant divided each shareholder's expected quarterly draw by three and paid that amount each month. However, Schedule B attaches this condition:

> "If sufficient funds are not available to pay the above amounts for the specified quarter, these amounts will be reduced on a proportionate basis to equal funds available for shareholder compensation."

That clause demonstrates that the actual amount that any shareholder would receive could be reduced, depending on the financial condition of the corporation. The fact that the amount was not reduced during a particular quarter does not alter the character of the agreement: Defendant did not agree to pay plaintiff "at a fixed rate." ORS 652.210(2). Instead, defendant and plaintiff agreed to share profits and losses. As the Supreme Court held in *Lamy*, that is a key element of a copartnership. Therefore, plaintiff was not an "employee" within the meaning of the wage claim statute.

In his fifth assignment of error, plaintiff contends that the trial court erred in holding that defendant did not

breach the parties' contract by not paying shareholder compensation under Schedule B and by not paying amounts due a withdrawing shareholder under Schedule D.

■ Schedule B provides for shareholder compensation, but it permits reductions in compensation if sufficient funds are not available. The trial court found that defendant did not breach Schedule B, because it, in fact, did not have sufficient funds to pay shareholder compensation for that month. Plaintiff disputes the trial court's finding, arguing that the firm had $26,000 in cash and a $40,000 line of credit available to pay salaries. We review the findings for any competent evidence. *Rosalez v. Unigard Insurance Co.*, 283 Or 63, 67, 581 P2d 945 (1978). The evidence shows that $23,000 of the cash had been borrowed from the corporation's pension fund, and the firm had borrowed $12,000 from a bank to make the Schedule B payments the previous month. At the end of plaintiff's last month, the remaining shareholders agreed to *forego compensation under Schedule B in favor of repaying the bank loan.*[3] That evidence supports the trial court's finding that the corporation had insufficient funds. Therefore, it did not err in holding that defendant had not breached its contract under Schedule B.

Schedule D provides for compensation upon shareholder withdrawal. Paragraph 1 calls for payment of a share of $50,000 in proportion to the number of shares held by the withdrawing partner as a percentage of the total outstanding shares. Paragraph 2 calls for payment of additional amounts, based on a fairly complex set of calculations related to amounts of accounts receivable, work in progress and shareholder capital contribution. Although the judgment awarded damages under both paragraphs, the trial court said during the oral ruling that there was no breach of Schedule D. Plaintiff takes issue with the trial court's oral statement.[4]

_____

[3] Plaintiff does not contend that the firm's serious cash flow problem resulted from any lack of good faith on defendant's part.

[4] During the oral ruling after a discussion of Schedule B, plaintiff's counsel asked the judge whether he was finding that there was no breach. The following exchange occurred:

"COUNSEL: Well, are you essentially finding then that there was no breach?

"THE COURT: Yeah, there is no breach.

When a trial court's judgment is inconsistent with its oral statement, the written judgment prevails. *State v. Swain/Goldsmith*, 267 Or 527, 530, 517 P2d 684 (1974). Moreover, defendant admitted in its answer to the complaint that, as a 25-percent shareholder, plaintiff was entitled to one-fourth of the $50,000 to be paid out under Paragraph 1. Therefore, the trial court must have found, as a matter of law, that defendant breached at least that much of the agreement by failing to pay that amount when plaintiff left the firm. The trial court's judgment awarding damages under Paragraph 2 also could only have been predicated on finding a breach of that paragraph; there is no other basis on which an award could have been made. We conclude that the trial court found that defendant breached its duties under Schedule D.

In his sixth assignment of error, plaintiff argues that the trial court erred in its calculation of damages under Schedule D by permitting defendant to take an extraordinary write-off, which he contends defendant did solely to reduce amounts due him under the contract. Paragraph 2 of Schedule D, which provides for a payout based on amounts of accounts receivable, work in progress and other factors, calls for an automatic 5-percent reduction of accounts receivable and work in progress, predicated on the assumption that some of those assets would be uncollectible. The month plaintiff departed, defendant wrote off substantially more than 5 percent of its accounts receivable as uncollectible. At least some of the "purged" accounts later were collected.

The trial court found that there was nothing in the Agreement that prevented defendant from periodically purging its accounts receivable and that defendant had done so in

---

"COUNSEL: By the defendant?

"THE COURT: That's right. I'm agreeing that there was a lack of funds, according to the contract, for sufficiency of funds to pay. I don't find any breach.

"COUNSEL: And no breach in failure to make a Schedule D payment of any size?

"THE COURT: That's correct. * * * Now, go ahead, [counsel for plaintiff].

"COUNSEL: I'm at C on this computation."

It possible that either the trial judge or the court reporter may have misheard plaintiff's question. The court may have thought that counsel asked if the court found no breach for a failure to make a Schedule *B* payment. However, neither plaintiff nor defendant asked the court to clarify its statement or moved to correct the transcript.

good faith. Plaintiff concedes that the Agreement permits defendant to take write-offs in excess of 5 percent, but argues that the court erred in permitting defendant to take an extraordinary write-off in this case because of defendant's bad faith and improper motives. Plaintiff further argues that the trial court should have at least adjusted the write-off by the amounts that ultimately were collected prior to trial. We do not agree.

We review the trial court's findings for any competent evidence that supports them. *Rosalez v. Unigard Insurance Co., supra,* 283 Or at 67. The record includes the testimony of several witnesses explaining the basis for defendant's conclusion that the purged accounts were, in fact, uncollectible. There also is testimony that the write-offs were not taken for the purpose of depriving plaintiff of amounts due him under the Agreement. That testimony supports the trial court's findings. As for adjusting the write-off after the fact to reflect amounts later collected, there is nothing in the contract that would permit defendant to make such an adjustment, and the court did not err in declining to read such a provision into the contract. *Wikstrom v. Davis et ux,* 211 Or 254, 268, 315 P2d 597 (1957).

In his seventh, eighth and ninth assignments of error, plaintiff complains that the trial court erred in failing to include certain accounts in its calculation of accounts receivable, for the purposes of calculating damages under Paragraph 2 of Schedule D. Specifically, he argues that the trial court should have included receivables and work in progress from a former shareholder, receivables from the "Traub Estate" account and amounts carried on the firm's books as "costs advanced to clients." The trial court found that the meaning of "accounts receivable" under the Agreement was ambiguous, and that the weight of the evidence as to the parties' intentions was that these disputed amounts were not to be included in "accounts receivable" for the purposes of calculating payments under Paragraph 2 of Schedule D.

Whether language in a contract is ambiguous is a question of law. *OSEA v. Rainier School Dist. No. 13,* 311 Or 188, 194, 808 P2d 83 (1991); *CH2M Hill Northwest, Inc. v. Parktel I, Inc.,* 107 Or App 461, 465, 812 P2d 840 (1991). If

the language is ambiguous, then what the parties intended by that language is a question of fact, which we review for support by any competent evidence. *Pritzker v. Carr*, 113 Or App 310, 313, 832 P2d 1250, *mod* 115 Or App 173, 836 P2d 1376 (1992). We agree with the trial court that the Agreement is ambiguous. A contract provision is ambiguous if it is "capable of more than one sensible and reasonable interpretation." *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den* 299 Or 314 (1985). That is the case here. While plaintiff's assertion that the disputed amounts should be considered "accounts receivable" is plausible, so is defendant's assertion that they should not. Accordingly, we turn to the trial court's findings as to the parties' intentions concerning this language. Nothing in the Agreement suggests that the former shareholders' accounts are to be considered the firm's accounts. There was testimony to the contrary from defendant's CPA, its administrator and its other shareholders. The Agreement specifically provides for separate treatment of the "Traub Estate" account in Schedule C, and there was testimony that, by including the separate schedule for that account, it was intended that it not be included in Schedule D calculations. Finally, nothing in the Agreement expressly includes "costs advanced to clients" as "accounts receivable" under Schedule D, and there was other testimony to support the trial court's interpretation. The trial court committed no error in finding that these amounts were not included in accounts receivable.

In his tenth assignment of error, plaintiff argues that the trial court erred in calculating the total damages under Schedule D. In essence, plaintiff argues that the trial court should have inserted in the Schedule D formula all of the figures that he considers the correct ones, assuming he prevails on his previous assignments of error. Plaintiff, however, does not prevail on any of the relevant assignments of error. The trial court, therefore, did not err in calculating damages under Schedule D.

Plaintiff's eleventh, twelfth and thirteenth assignments of error contest the trial court's provision for terms of payment of amounts due under the Agreement. Schedule D provides that the firm is to pay departing shareholders'

amounts due under that schedule "in equal monthly payments of principal and interest at 8 percent per annum for five years * * *." Part of the amounts due under that schedule include the return of a capital contribution each shareholder is presumed to have made. Plaintiff was to have contributed accounts receivable worth a maximum of $43,334. However, plaintiff never paid that amount to the firm prior to his departure; he paid only $2,173. Thus, during the time plaintiff worked as a shareholder, the firm never had the benefit of his full capital contribution for either cash flow or interest purposes.

The contract does not address the consequences of a shareholder failing to make the required contribution. The trial court responded with a creative attempt to adjust plaintiff's shareholder payout to counterbalance the perceived inequity to the firm, which never had the use of the full capital contribution. First, it ordered that payment of the amounts due under Schedule D would be delayed until after a period equivalent to the time it would have taken to repay the maximum capital contribution, had plaintiff paid it in the first place. Second, it ordered that the Schedule D amounts defendant eventually would pay would accrue no interest. Plaintiff argues that there is nothing in the Agreement that permits the trial court to impose this payment schedule. Defendant contends that, although there is no explicit language in the contract to support the trial court's decision, the judgment, nevertheless, should be affirmed because it reflects the court's best attempt to remedy a situation that simply was not contemplated by the parties. We cannot agree with defendant's contention.

█ █ In fashioning this payment schedule, the court did not purport to resolve any ambiguity in the Agreement; it did not construe any particular provision of the Agreement at all. Instead, it ignored unambiguous provisions of the Agreement in order to remedy what it perceived to be an unanticipated inequity. A court, however, may not read into a contract provisions that simply do not exist. *Sellgren et ux v. Boyer*, 207 Or 521, 523, 297 P2d 864 (1956). The Agreement calls for the return of any capital contribution paid. Plaintiff paid $2,173. That money should be returned to plaintiff as the Agreement provides. The Agreement calls for payment of

that capital contribution and other sums due under Schedule D "in equal monthly payments of principal and interest at 8 percent per annum for five years." That money also should be paid to plaintiff as the Agreement provides. Nothing in the Agreement contemplates considering capital contributions not actually made and then delaying the terms of payment under Schedule D accordingly. It was, therefore, error for the trial court to have done so.

Defendant cross-appeals, because the trial court awarded damages under Schedule D after saying that there was no breach of that provision. Because we have concluded that the court did find a breach, defendant's cross-appeal is not well taken.

On appeal, reversed and remanded for modification of judgment as to terms of payments, and otherwise affirmed; on cross-appeal, affirmed.