Argued and submitted November 12, 1999, affirmed December 6, 2000

Charles F. TAYLOR,
*Respondent,*

*v.*

Rodney John KERBER
and Cynthia Ann Kerber;
Sharon A. Frederick;
Provident Central Credit Union;
Mortgage Lenders of America, Inc.;
Oregon Department of Revenue;
Pauline McClary;
Kell, Alterman & Runstein,
a partnership;
and Charles R. Williamson,
*Defendants,*

*and*

James E. LEUENBERGER,
*Appellant.*

(C94-1200CV; CA A99878)

15 P3d 93

James E. Leuenberger argued the cause and filed the brief *pro se*.

Christine A. Kosydar argued the cause for respondent. With her on the brief was Stoel Rives LLP.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

Relying on ORCP 17 C, the trial court sanctioned defendants and their attorney twice. On appeal, the attorney challenges both sanctions. We affirm.

Although this case has a lengthy history, it may be summarized relatively briefly. Plaintiff filed an action in 1994 to recover on defendants' note and to foreclose a trust deed that defendants had given as security. Defendant Rodney Kerber responded to plaintiff's action by filing for bankruptcy four times. Each of his bankruptcy proceedings was dismissed, and the bankruptcy court imposed sanctions on him when it dismissed his last filing. Defendant Cynthia Kerber also filed for bankruptcy after Rodney's first unsuccessful filing; her bankruptcy proceeding was dismissed as well. Ultimately, both defendants defaulted in plaintiff's state court action. On August 5, 1996, the state trial court entered a judgment of foreclosure in plaintiff's favor.

The trial court's judgment precipitated various motions by defendants, as well as a petition for mandamus against the judge who denied them. Defendants' mandamus petition was unsuccessful, as their motions had been. On January 2, 1997, the trial court entered a supplemental judgment against defendants for $29,030.27 for attorney fees that plaintiff had incurred. Cynthia appealed from the supplemental judgment. In June 1997, plaintiff sought a writ of execution based on the August 5, 1996, judgment and the January 2, 1997, supplemental judgment. The supplemental judgment, however, did not contain a separate section specifying the judgment creditor and other information required by ORCP 70 A(2)(a). When the clerk's office brought that omission to plaintiff's attention, he submitted an amended supplemental judgment, which the trial court signed and entered on June 13, 1997. Plaintiff then obtained a new writ of execution based on the 1996 judgment and the June 13, 1997, amended supplemental judgment.

A sheriff's sale on defendants' property was scheduled for July 30, 1997. On July 29, approximately half an hour before he appeared in Washington County Circuit

Court, defendants' attorney faxed a letter to plaintiff's attorney in Multnomah County that he would be moving *ex parte* to vacate the amended supplemental judgment, one of the judgments on which the writ of execution was based.[1] According to plaintiff's attorney, she did not receive the fax until five minutes before defendants' attorney appeared in court. When asked at the hearing on plaintiff's first motion for sanctions why he had given plaintiff such inadequate notice, defendants' attorney responded "desperation." When the court asked what authority he had for filing that particular motion *ex parte*, defendants' attorney provided none.

After considering defendants' attorney's responses, the trial court observed:

"This file is full of at the last minute your [clients'] doing everything in their power to stop the judgment that's been entered. At some point it simply has to stop. I don't know what it's going to take. You've lost at every turn. * * * You got—this is a small judgment that has ballooned out of sight. And in large part due to the actions of your clients and the acquiescence of their attorneys."

The court concluded that "[t]his is an appropriate case for sanctions." The trial court subsequently entered written findings of fact, which state, in part:

"3. Defendants were served with a copy of the Amended Supplemental Judgment on June 5, 1997, but took no action to object to the Amended Supplemental Judgment or to appeal its entry.

"4. More than seven weeks later, on the day before the scheduled foreclosure sale, defendants and their attorney submitted ex parte to the Court without prior notice to plaintiff a motion to Vacate the Amended Supplemental Judgment together with their form of order.

"5. The court denied defendants' Motion to Vacate, but scheduled a hearing for the following day July 30, 1997 at 9:00 a.m., one hour before the scheduled foreclosure sale.

---

[1] Defendants argued that the trial court lacked jurisdiction to correct the supplemental judgment and enter an amended supplemental judgment because one of them had appealed from the supplemental judgment. It followed, they argued, that the writ of execution was based, at least partially, on a void judgment. The trial court later ruled that it had authority to correct its judgment.

Defendants and their attorney appeared at the hearing and plaintiff appeared by his attorney by telephone. The court refused to rule on defendants' Motion and ordered that a hearing be set in the regular course and that defendants' attorney immediately schedule a hearing date. However, defendants' attorney did not schedule a hearing date because defendant Rodney Kerber had filed [for] bankruptcy the day before, but neither defendants nor their attorney so advised the Court during the proceedings on July 30, 1997 so that the hearing would be discontinued.

"6.   Defendant Rodney Kerber's bankruptcy case was dismissed with sanctions on grounds of a bad faith filing on August 6, 1997.

"7.   Defendants' sole explanation for conducting themselves in this fashion is that they were desperate to save their house f[ro]m foreclosure."

Based on those factual findings, the trial court entered a judgment imposing sanctions on both defendants and their attorney. The judgment recites: "Defendants' and their attorney's * * * filing and submission to the Court of their Motion to Vacate the Amended Supplemental Judgment and the hearings thereon were for an improper purpose, specifically to delay and hinder plaintiff's scheduled foreclosure sale."

The sheriff's sale was reset to Monday, August 25, 1997. After the close of business on Friday, August 22, defendants' attorney faxed plaintiff's attorney a copy of an *ex parte* motion to stay the foreclosure sale.[2] Defendants' motion asked that the sale be stayed so that the trial court could determine the amount of money they owed on the note. Defendants' attorney did not present the *ex parte* motion to the same trial court judge who had imposed sanctions on him and his clients less than two weeks earlier. Rather, he appeared *ex parte* before a different judge, who granted the stay.

On August 27, plaintiff moved to set aside the stay and also for sanctions. The trial court granted both motions. Its ruling on plaintiff's second motion for sanctions states in part:

---

[2] Plaintiff's attorney did not receive defendants' motion until Monday morning, the day of the scheduled foreclosure sale.

"6. Plaintiff's foreclosure sale was reschedule[d] to August [2]5, 1997. Despite the Court's previous admonishments and rulings on August 14, 1997, defendants and their attorney * * * again on August 25, 1997 submitted to the Court ex parte, without notice to plaintiff, a Motion to Stay Sheriff's Sale together with their form of Order. The Order Staying Sheriff's Sale was granted and entered.

"7. Defendants['] ex parte Motion to Stay Sheriff's Sale was (a) presented for an improper purpose, including to delay plaintiff's foreclosure, and (b) not warranted by existing law, and, in fact, was contrary to ORS 19.033 and ORCP 72.

"8. First, defendants' and their attorney's failure to give notice was designed to delay plaintiff's foreclosure. Such failure was not justifiable because they knew plaintiff would object vigorously to their Motion. Defendants' and their attorney's argument that they faxed to plaintiff's attorney's office the preceding business day, Friday, August 22, 1997, a copy of their Motion after business hours without any indication when the Motion was to be presented to the Court is not adequate notice that it will be presented the following business day at 8:45 a.m. ex parte. Neither defendants nor their attorney telephoned or left any message to plaintiff's attorney of their intent to present such Motion. Under the circumstance, the fax to plaintiff's attorney's office after hours on the business day preceding presentation to the Court, and then presenting the Motion to the Court at 8:45 a.m., the next [business] day, was designed to avoid giving notice.

"9. Second, defendants' Motion was without any basis. Defendants represented to the Honorable Timothy Alexander that they needed real, tangible figures for the judgment debts [and] that the Court should determine those figures. Calculation of those figures, however, in light of the Court's rulings is a matter of arithmetic. In addition, under ORS 19.033 and ORCP 72A, 'No stay of proceedings to enforce judgment may be entered by a trial court * * * after a notice of appeal has been served and filed as provided in ORS 19.023 through ORS 19.029 and during the pendency of such appeal.' Consequently, the Court had n[o] authority to stay proceedings and defendants' Motion was therefore without any legal foundation."

Based on those findings, the trial court set aside the stay and imposed a second sanction on defendants and their attorney.

On appeal, defendants' attorney argues that the first sanction should be set aside because the trial court erred in finding that defendants' July 29, 1997, motion "was made for an improper purpose, specifically to delay and hinder plaintiff's scheduled foreclosure sale."[3] He contends that defendants' motion to vacate was based on a colorable legal claim that the trial court lacked jurisdiction to enter the amended supplemental judgment. It follows, he concludes, that "[t]he primary purpose of the July 29, 1997 Ex Parte Motion [to vacate] was to correct the record."

The attorney's argument may be based on one of two theories. He may be taking the position that if a motion presents a colorable legal claim, it can never be brought for an improper purpose. Alternatively, he may be taking the position that, on this record, the trial court should have concluded that he acted for a proper rather than an improper purpose.

■   The attorney's first theory is inconsistent with the plain language of ORCP 17, and the cases interpreting that rule's federal counterpart. ORCP 17 C specifies that an attorney who "signs, files, or otherwise submits an argument in support of a pleading, motion, or other paper" makes at least two separate certifications. The attorney certifies "that the pleading, motion or other paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." ORCP 17 C(2). He or she also certifies "that the claims, defenses, and other legal positions taken in the pleading, motion, or other paper are warranted by existing law or by a nonfrivolous argument" for changing the law. ORCP 17 C(3).

■   If a finding that a motion was not warranted by existing law under ORCP 17 C(3) were a necessary prerequisite for a finding that the motion was presented for an improper purpose under ORCP 17 C(2), ORCP 17 C(2) would

---

[3] Defendants also appealed, but their appeal was dismissed for failure to file an opening brief.

be reduced to a nullity. Settled principles of statutory construction counsel against that interpretation. ORS 174.010; *International Brotherhood v. Oregon Steel Mills, Inc.*, 168 Or App 101, 106, 5 P3d 1122 (2000); *State v. Cook*, 163 Or App 578, 586, 989 P2d 474 (1999). To be sure, the fact that a pleading or motion is (or is not) based on a nonfrivolous legal theory bears on the question whether it was filed for an improper purpose. But nonfrivolous motions or pleadings may still be filed for improper purposes. *See Mars Steel Corp. v. Continental Bank*, 880 F2d 928, 931-32 (7th Cir 1989) (en banc) (interpreting federal counterpart to ORCP 17); *Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F2d 1470, 1476 (9th Cir 1988) (same). Other factors, such as a pattern of abusive litigation activity, may convince a court that even a nonfrivolous motion is filed for reasons that ORCP 17 C(2) declares improper. *See Aetna Life*, 855 F2d at 1476; Charles A. Wright and Arthur R. Miller, 5A *Federal Practice and Procedure*, § 1335 at 84-85 & n 95 (2d ed 1990). The fact that defendants' motion to vacate was based on a colorable legal claim does not establish, as a matter of law, that the trial court erred in concluding that the motion was filed for an improper purpose.

■        The remaining question is whether the trial court erred in determining that, on this record, defendants' motion was in fact filed for an improper purpose. Plaintiff argues that we should affirm the trial court's ruling unless we can say that it abused its discretion in reaching that conclusion. Defendants' attorney invites us to substitute our judgment for the trial court's in determining whether he acted for an improper purpose. In *Fernley v. Lloyd*, 164 Or App 109, 113, 988 P2d 930 (1999), we explained that we review the trial court's decision whether to impose a sanction under ORCP 17 for abuse of discretion. In this case, the exercise of the trial court's discretion turns on its resolution of what is essentially a factual issue—whether defendants filed their motion for a proper or an improper purpose. *See Cantua v. Creager*, 169 Or App 81, 97, 7 P3d 693 (2000) (whether party acted with the requisite bad motive is a factual issue); *Edgington v. Fitzmaurice*, 29 Ch Div 459, 483 (1885) ("The state of a man's mind is as much a fact as the state of his digestion.").[4] We

---

[1] In this case, the inquiry is primarily factual. Because other certifications that ORCP 17 requires may entail consideration of both legal and factual issues, our

accordingly ask first whether there is evidence to support the trial court's factual findings and then ask whether, given those factual findings, the trial court abused its discretion.

█ On this record, at least three factors support the trial court's finding that defendants filed their motion for an improper purpose. First, defendants' actions since the beginning of the case established a pervasive pattern of needless delay. Second, defendants waited until the day before the foreclosure sale to file their *ex parte* motion and even then effectively gave plaintiff's attorney no notice. Third, when asked at the hearing on sanctions why they had resorted to such a tactic, defendants' attorney's only answer was "desperation." The record supports the trial court's finding that defendants' and their attorney's primary purpose in filing the motion to vacate was an improper one. *See Mattiza v. Foster*, 311 Or 1, 10, 803 P2d 723 (1990) (looking to the "primary aim" of the litigants to determine if they acted in bad faith). Given that finding, the trial court did not abuse its discretion in imposing the first sanction.

█ The trial court's second sanction was based on two factors: The court reasoned that defendants had filed their second *ex parte* motion for an improper purpose and that their motion was not warranted by existing law. Defendants' attorney challenges both reasons for imposing the second sanction. The attorney's first challenge—that the court erred in determining that he acted for an improper purpose—can be answered quickly. When defendants filed a second *ex parte* motion the day of the scheduled foreclosure sale and did so without adequate notice, they acted in direct contravention of the trial court's ruling less than two weeks earlier. The trial court explained at the hearing on plaintiff's second motion for sanctions:

> "When I heard that a stay had been issued under almost identical facts to the previous stay that had been issued that I sanctioned you for, I was speechless. I'm not very often speechless. I absolutely couldn't believe that as an officer of the court you did exactly what I had told you not to do. That you did precisely what I had sanctioned you for before. * * * [T]here was no basis for your stay, none."

review will vary accordingly. *See G. W. Paulson Co. v. Grady*, 171 Or App 198, 14 P3d 672 (2000).

The record supports the trial court's finding that defendants acted for an improper purpose in filing their August 25, 1997, motion to stay.

■     In imposing the second sanction, the trial court also relied on its conclusion that defendants' August 25, 1997, motion to stay the sheriff's sale was baseless. Defendants sought a stay to permit the trial court to determine, pursuant to ORS 18.410, how much they owed on the judgment.[5] The trial court reasoned that there was no basis for the stay because "[c]alculation of those figures * * * in light of the Court's [August 14, 1997,] rulings [wa]s a matter of arithmetic." As we understand the trial court's ruling, its point was not that ORS 18.410 does not provide for a determination of the amount owed on a judgment. Rather, the point was that defendants were not entitled to a stay of the foreclosure sale because they could easily have calculated the amount due.

■     A party may have a right to move for a stay and also for a determination of the amount due, *see* ORS 18.410, but the question whether a specific motion is baseless may sometimes be inextricably connected with the circumstances that gave rise to it. We cannot say that, in the context of this case and the events that preceded defendants' motion, the trial court erred in ruling that defendants' August 25, 1997, motion to stay was baseless.[6] Neither sanction the trial court imposed was an abuse of discretion.

     Affirmed.

---

[5] Defendants had previously asked the court to determine how much they owed under ORS 18.410 on the judgment. At the hearing on August 14, 1997, the court and the parties clarified the amounts on which interest would be calculated.

[6] As an alternative ground for saying that defendants' motion was not supported by existing law, the trial court reasoned that it was contrary to *former* ORS 19.033 and ORCP 72. The court's reasoning appears to have been based on the proposition that a supersedeas bond or its equivalent was a prerequisite to obtaining a stay. Because we agree that the court did not err in holding that defendants' motion to stay was baseless, we need not decide whether this alternative ground would support sanctions.