Argued and submitted October 6, 1999, affirmed January 31, 2001

In the Matter of the Administration of
the testamentary trust of Sibyl J. Keirsey, Deceased.

Bess J. SINIO,
*Petitioner below,*

*v.*

Frank BLEDSOE
and Teresa Bledsoe,
husband and wife,
*Respondents,*

*v.*

Mary JOHNSON,
*Appellant.*

Bess J. SINIO,
*Plaintiff,*

*v.*

Frank BLEDSOE
and Teresa Bledsoe,
*Defendants.*

(P96-11-05; CA A100219)

18 P3d 410

Jeffrey M. Batchelor argued the cause and filed the brief for appellant.

No appearance for respondents.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

Armstrong, J., dissenting.

## KISTLER, J.

The trial court imposed sanctions on appellant, an attorney, for filing an affidavit that was designed to make the court think that her client had little or no assets when her client in fact had $60,000 to $70,000 in assets. We affirm.

Bess Sinio is the beneficiary of a trust created by her mother's will. Sinio's son, Frank Bledsoe, is the trustee. Sinio concluded that her son had breached his fiduciary duties. Sinio's first attorney filed an action in circuit court to recover the damages that Sinio had allegedly suffered as a result of her son's actions. Sinio discharged her first attorney and hired appellant to represent her. Appellant concluded that Sinio should file a second, concurrent action against her son and daughter-in-law concerning the administration of the trust. *See* ORS 128.135. ORS 128.155 required Sinio to post a bond in the trust action to cover any attorney fees and other costs that the court might order Sinio to pay.[1] Appellant filed a motion to waive that requirement. She also filed an affidavit from Sinio in support of the motion.

Sinio's affidavit stated:

"I, BESS K. SINIO, having been first duly sworn on oath, do hereby depose and say that:

"I am the Petitioner in the above captioned case.

"I am the current beneficiary for the Sibyl J. Kiersey Trust. The trust was set up by my deceased mother for my support and benefit. The trust instrument requires by [*sic*] son, as Trustee, to pay support for me to allow me to continue the lifestyle I enjoyed during my mother's lifetime.

"Because I have never received any significant amount of money, and no money at all for over a year from the Trust, I do not have sufficient assets to post a bond in this case.

---

[1] ORS 128.155 provides:

"A beneficiary who petitions the court under ORS 128.135 or 128.145 shall file with the petition an irrevocable letter of credit * * * or an undertaking with one or more sureties to the effect that the beneficiary will pay all costs, disbursements and reasonable attorneys' fees that may be ordered against the beneficiary in the proceeding."

"Requiring me to post a bond would create an impossible financial hardship and disallow me the relief to which I am entitled."

The trial court initially granted Sinio's motion, which was unopposed. At a later hearing, the court reconsidered and ruled that the statutory bond requirement could not be waived. In that hearing, the court learned that Sinio had recently received approximately $41,000 from the sale of her late husband's home and that she had approximately $60,000 to $70,000 in total assets. The court ordered Sinio to post a $25,000 bond.

Approximately a month later, Sinio's son, Frank Bledsoe, and his wife filed a motion for sanctions under ORCP 17 against appellant. Among other things, the Bledsoes argued that appellant had knowingly submitted a false affidavit to the court in violation of ORCP 17 C(4). The court agreed. Its letter opinion states:

"Bledsoes complain that [appellant] filed pleadings containing statements which she knew were false. They primarily complain about the Affidavit of Sinio dated October 31, 1996. This Affidavit was submitted to the Court in connection with [appellant's] ex parte application for a waiver of the bond required by ORS 128.155. * * *

"The Affidavit was carefully crafted to give the impression that Sinio had no significant funds. It can, however, be argued that the only thing the Affidavit actually says is that Sinio had received no significant amount of money from the Trust.

"It developed, after discovery, that Sinio had received $41,753.98 as the proceeds of the sale of property in Sweet Home, Oregon on or shortly after September 5, 1996. [Appellant] does not seriously dispute the fact that she knew that Sinio had, at the time of the filing of the Affidavit, $60,000 to $70,000 of available funds. [Appellant] says that she was operating under instructions from Sinio, who felt that she did not have sufficient funds to post the required bond.

"The Court finds [appellant's] explanations regarding this Affidavit to be inadequate. The Affidavit, printed on [appellant's] stationery and presumably prepared by her or at her direction, is designed to lead the Court to think that

Sinio had little or no assets. ORCP 17 requires a higher degree of candor on the part of an attorney presenting such a document to the Court.

"The Court further finds that the Bledsoes were substantially damaged by this violation of Rule 17. Had Judge Selander been candidly advised of all of the facts, he would not have allowed the ex parte motion to waive the bond. This is demonstrated by the fact that, when the facts later came to his attention, he ordered Sinio to post the required bond before the case could proceed."

The trial court ordered appellant to pay the Bledsoes $3,000 for the attorney fees that they had incurred as a result of her submission.

Appellant moved for reconsideration. Although the court withdrew a finding on another matter, it reaffirmed its ruling concerning the affidavit. It stated:

"Pursuant to ORCP 17D, the Court finds that [appellant] should be sanctioned for filing pleading[s] which were designed to lead the Court to believe that Petitioner Bess Sinio ('Petitioner') had little or no assets, when [appellant] knew that Petitioner had $60,000 to $70,000 in assets at the time of filing. In particular, [appellant] filed a Motion, Affidavit and Order for Waiver of Posting Bond on behalf of Petitioner, on November 4, 1996, (the 'Motion to Waive Bond'). Petitioner's Affidavit provides in part:

" 'Because I have never received any significant amount of money, and no money at all for over a year from the Trust, I do not have sufficient assets to post a bond in this case.'

"Affidavit of Petitioner, Bess Sinio, paragraph 2. [Appellant] knew that Petitioner had recently received $41,753.98 from the proceeds of the sale of property in Sweet Home, Oregon, and had total assets of $60,000 - $70,000. [Appellant] filed the pleading without disclosing these facts to Judge Selander."

ORCP 17 C provides that an attorney who "signs, files, or otherwise submits" a pleading, motion, or other paper certifies, "after the making of such inquiry as is reasonable under the circumstances":

"that the allegations or other factual assertions in the pleading, motion, or other paper are supported by evidence. Any allegation or other factual assertion that the party or other attorney does not wish to certify to be supported by evidence must be specifically identified. The attorney or party certifies that the attorney or party reasonably believes that an allegation or other factual assertion so identified will be supported by evidence after further investigation and discovery."

ORCP 17 C(1), (4). ORCP 17 D provides that the trial court "may impose sanctions against a person or party who is found to have made a false certification under section C of this rule, or who is found to be responsible for a false certification under section C of this rule." Read together, ORCP 17 C(4) and D establish that, if an attorney or party does not reasonably believe that a factual assertion is or will be supported by evidence, the attorney has made a false certification for which the trial court may impose sanctions.

A trial court faced with a motion for sanctions under ORCP 17 C(4) must answer two questions. The first is what is the factual assertion that is being challenged. In most cases, there will be little question about what the party said. When, however, a factual assertion is ambiguous, a court must resolve the ambiguity in order to rule on the motion for sanctions. As explained more fully below, the question of what a party said presents a question of fact for the trial court. The second question is whether the factual assertion is "supported by evidence." ORCP 17 C(4). In answering that question, the issue is not whether the factual assertion is correct. Rather, the question is whether the person making the allegation or assertion reasonably believed that there either was or would be some evidence to support the assertion. *See* ORCP 17 C(1) (specifying that the certification is based "on the person's reasonable knowledge, information and belief, formed after the making of such inquiry as is reasonable under the circumstances"); *cf. Mars Steel Corp. v. Continental Bank N.A.*, 880 F2d 928, 932-33 (7th Cir 1989) (en banc) (drawing a distinction, in considering sanctions under FRCP 11, between the reasonableness of an attorney's inquiry and the accuracy of his or her conclusions); American Judicature Society, *Rule 11 in Transition, the Report of the Third Circuit*

*Task Force on Federal Rule of Civil Procedure 11*, 15-23 (Stephen B. Burbank reporter) (same).

In this case, appellant advances two arguments why the trial court erred. She argues initially that ORCP 17 C(4) does not require that lawyers make complete disclosure; it only requires that any factual assertion that they do make be supported by evidence. Appellant's first argument assumes that all the factual assertions in Sinio's affidavit are supported by evidence, and that the court imposed sanctions because the affidavit did not set out all the relevant facts. Appellant's second argument is potentially at odds with her first. She acknowledges that a sentence in the affidavit is ambiguous, and she does not dispute that, depending on how the ambiguity is resolved, a critical factual assertion may not be supported by evidence. She reasons, however, that any ambiguity in what Sinio intended to say should be resolved in Sinio's favor and that, interpreted in that fashion, the factual assertions in the affidavit are supported by evidence.

We begin with appellant's second argument. We agree with appellant that the affidavit contains an ambiguity. In her affidavit, Sinio states: "Because I have never received any significant amount of money, and no money at all for over a year from the Trust, I do not have sufficient assets to post a bond in this case." That statement could be interpreted to mean that Sinio had received no significant assets from the trust within the past year, or it could be interpreted to mean that Sinio had little or no assets. The trial court recognized that both interpretations were possible. It found, however, that while the former interpretation was "argu[able]," the latter was the meaning that appellant had intended to convey. The court found that the "[a]ffidavit was carefully crafted to give the impression that Sinio had no significant funds." It later reaffirmed that appellant had filed pleadings that "were designed to lead the Court to believe that [Sinio] had little or no assets, when [appellant] knew that [Sinio] had $60,000 to $70,000 in assets at the time of filing."

■ If a statement is ambiguous, what the speaker intended to say ordinarily presents a question of fact for the trial court. *See Taylor v. Kerber*, 171 Or App 301, 15 P3d 93

(2000); *Thompson v. Bolliger, Hampton & Tarlow*, 118 Or App 700, 709, 849 P2d 526, *rev den* 317 Or 163 (1993). Here, the trial court resolved the ambiguity against Sinio. It found that her affidavit was both "carefully crafted" and "designed" to lead the court to conclude that she had little or no assets. Appellant does not argue that the record is not sufficient to permit the trial court to interpret the affidavit the way it did. Nor does she argue that there is evidence to support the statement that Sinio had little or no assets.[2] Rather, appellant reasons:

> "[The existence of the ambiguity] alone should have led [the trial court] to deny the motion for sanctions, because the meaning of an ambiguous affidavit, no less than the meaning of an ambiguous contract, *see, e.g., Thompson v. Bolliger, Hampton & Tarlow*, 118 Or App 700, 709, 849 P2d 526 (1993), always presents a question of fact. And if one construes Ms. Sinio's affidavit to state only that she never received a substantial amount of money from the trust—a permissible construction—then the 'factual assertion' necessarily is 'supported by evidence,' because Ms. Sinio never did."

As we understand appellant's argument, it turns on the proposition that, in ruling on an ORCP 17 C(4) motion, the trial court should not determine what an ambiguous statement was intended to say before it asks whether that statement is supported by evidence. Rather, it should construe the ambiguity in the light most favorable to the person opposing the motion for sanctions and ask whether the statement, so construed, is supported by evidence.

■      Appellant's argument does not find support in either the text of ORCP 17 C(4) or the federal commentary on which she relies. The text of ORCP 17 C(4) says that a party certifies "that the allegations and other factual assertions in the pleading, motion or other paper are supported by evidence." Nothing in the text of that rule suggests that, if what a party said is ambiguous, a trial court may not determine what a

---

[2] The trial court found that "[appellant] knew that [Sinio] had $60,000 to $70,000 in assets at the time of the filing," and appellant has not questioned that finding on appeal.

party intended to say before it asks whether there is some evidence to support the statement.

Appellant appears to rely on the commentary to the 1993 amendments to FRCP 11 to reach a different conclusion. As appellant correctly notes, the commentary to the federal rule uses the summary judgment standard to illustrate when a party's assertion will be "supported by evidence."[3] Appellant's argument assumes that the same standard should be used in determining what the party meant to say when his or her factual assertion is ambiguous. The commentary, however, does not say that, and nothing in the text of ORCP 17 C(4) suggests that, in ruling on a motion under that subsection, a court should not follow the ordinary procedural rules and first determine what the party intended to say before it asks whether there is evidence to support that statement. Put in the context of this case, ORCP 17 C(4) does not require us to decide whether there is evidence to support a statement that the trial court found Sinio did not intend to make.

■ Appellant argues alternatively that ORCP 17 C(4) does not require a party, on pain of sanctions, to disclose all relevant facts. It requires only that any factual assertion that a party does make be supported by evidence. The legal premise of appellant's argument is consistent with the text of the Oregon rule and the cases interpreting its federal counterpart. *See Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F2d 1531, 1539-40 (9th Cir 1986). The difficulty with appellant's argument is that, in this case, the trial court found that a critical sentence in Sinio's affidavit was ambiguous and that the sentence was "designed to lead the Court to believe that [Sinio] had little or no assets, when [appellant]

---

[3] The commentary states, in relevant part:

"The certification [concerning allegations and other factual contentions] is that there is (or will likely be) 'evidentiary support' for the allegation, not that the party will prevail with respect to its contention regarding the fact. That summary judgment is rendered against a party does not necessarily mean, for the purposes of this certification, that it had no evidentiary support for its position. On the other hand, if a party has evidence with respect to a contention that would suffice to defeat a motion for summary judgment based thereon, it would be sufficient 'evidentiary support' for purposes of Rule 11."

Commentary on FRCP 11 (1994).

knew that [Sinio] had $60,000 to $70,000 in assets at the time of filing." In light of that finding, Sinio's affidavit was not simply incomplete. It was instead based on a factual assertion that was not supported by evidence.

The dissent advances three additional reasons why, in its view, the trial court erred. First, the dissent reasons that "there is no compelling need to resolve the ambiguity in this affidavit." Resolution of what an ambiguous statement was intended to say is, however, the necessary predicate to deciding whether there is some evidence to support the statement that was made. When that issue is presented by a party's ORCP 17 C(4) motion, a court may not avoid its obligation to decide it.

Second, the dissent reasons that there was no factual basis in the record that would permit the court to find that Sinio's affidavit "was carefully crafted to give the impression that Sinio had no funds." The trial court's two letter opinions, however, identify the factual basis for its resolution of the ambiguity. The trial court noted initially that if the previous trial judge had "been candidly advised of all the facts, he would not have allowed the ex parte motion to waive the bond." The trial court reasonably could conclude, from the record before it, that appellant had a motive for crafting the affidavit to lead the court to believe that Sinio had little or no assets. Similarly, the trial court explained in its opinion on reconsideration that appellant knew that Sinio had total assets of $60,000 to $70,000 but "filed the pleading without disclosing those facts to [the trial court judge]." The trial court could rely on the omission of what would appear to be a critical fact to conclude that the ambiguity was not accidental and that the affidavit was, in fact, intended to say that Sinio had little or no funds. We do not suggest that the trial court was required to resolve the ambiguity this way. There is, however, a basis in this record to support its resolution of the ambiguity.

Finally, a theme runs through the dissent that, if trial courts are allowed to decide what an ambiguous statement means in the course of resolving a motion under ORCP 17 C(4), attorneys will be subject to the risk of sanctions on an arbitrary basis. There is no basis, however, for assuming that

trial courts will resolve these factual issues arbitrarily. Trial courts are far better situated than we are to decide what an ambiguous statement means. *See Cooter & Gell v. Hartmarx Corp.*, 496 US 384, 403-04, 110 S Ct 2447, 110 L Ed 2d 359 (1990) (addressing a related issue under FRCP 11). Not only is the responsibility to find facts generally allocated to trial courts, but the trial courts will almost always be more familiar with both the litigants and the course of the litigation than we will. *See id.* They are in a better position to decide whether an ambiguity was inadvertent or intentional and, if it were intentional, what a litigant intended to say.

ORCP 17 D gives the trial court discretion to impose sanctions if a party or an attorney has made a false certification in violation of ORCP 17 C. *See Fernley v. Lloyd*, 164 Or App 109, 113, 988 P2d 930 (1999). Given the trial court's findings, we cannot say that it abused its discretion.

Affirmed.

**ARMSTRONG, J.,** dissenting.

All that the evidence in this case shows is that appellant prepared and filed an ambiguous affidavit. There is no evidence that she intended the affidavit to be ambiguous or that she intended to mislead the court about plaintiff's financial condition. On the other hand, there is evidence to support one of the two possible meanings of the affidavit, and thus there is evidence that she complied with ORCP 17 C(4). Despite these facts, and without any evidence to support its conclusion other than the affidavit itself, the trial court found that appellant intended the affidavit to be ambiguous and that she carefully crafted it to mislead the court. It then relied on that conclusion and imposed sanctions. On appeal, the majority affirms the trial court's action for no apparent reason other than that the trial court did it. Because I do not think that an attorney who drafts a document that turns out to be ambiguous should be subject to the risk of sanctions on so arbitrary a basis, I dissent.

There is no dispute about the facts. The issues in the underlying case involved plaintiff's rights in a testamentary trust. Appellant drafted the affidavit, and plaintiff executed it, in order to support a motion to waive the bond that ORS

128.155 would otherwise require plaintiff to post. At the time that appellant drafted the affidavit, she knew that plaintiff was a widow in her 70s who was living on Social Security disability benefits that did little more than pay for her housing, that she had never received substantial income from the trust that her mother created for her benefit, and that she had received absolutely no payments from that trust for several years. Appellant also knew that plaintiff had recently sold her deceased husband's home, receiving about $41,000 in cash, and that she had $20,000 or $30,000 in other assets.[1]

The heart of the affidavit is the assertion that plaintiff did not have the financial ability to post the required bond. The trial court imposed sanctions for the statement in which plaintiff supported and explained that assertion. Plaintiff stated that, "[b]ecause I have never received any significant amount of money, and no money at all for over a year from the Trust, I do not have sufficient assets to post a bond in this case." Because there are two ways to read that statement, it is ambiguous. First, the statement could mean that plaintiff had never received any significant amount of money from the trust and had not received any money at all from that source for over a year. Second, it could mean that plaintiff had never received any significant amount of money from any source and that she had not received any money at all for over a year from the trust. The first meaning would be consistent with the facts as appellant knew them; the second would not.[2]

The trial court relied on ORCP 17 C(4) in imposing sanctions.[3] That rule provides that an attorney who files a

[1] It is not clear from the record whether those other assets were liquid, although there is some suggestion that they consisted, at least in part, of a bank account that plaintiff's previous attorney had recovered from defendants.

[2] Although plaintiff had total assets of $60,000 to $70,000, her income was extremely limited. A substantial bond or cash deposit could well have tied up her assets in a way that would have caused her serious difficulties within a relatively short time. Thus, there is evidence to support the statement that requiring plaintiff to post a bond would create an impossible financial hardship. The trial court did not rely on that statement in imposing sanctions, and I do not discuss it further.

[3] ORCP 17 D gives a court authority to impose sanctions if it finds that an attorney made or was responsible for a false certification under ORCP 17 C. On appeal, we first review the record to determine whether it supports the trial court's finding of a false certification. If it does, we then review the decision to impose sanctions for abuse of discretion. See *Westfall v. Rust International*, 314 Or 553,

paper certifies that the factual assertions in the paper "are supported by evidence." That phrase requires an objective examination of the evidence to determine whether it provides some support for the assertions. *See Westfall v. Rust International*, 314 Or 553, 558, 840 P2d 700 (1992) (discussing 1983 version of FRCP 11); 5A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1335 at 19 (2000 supp) (discussing 1993 version of FRCP 11(b)). That objective test has nothing to do with the attorney's purpose or intent. If the evidence supports the assertion, the attorney did not violate the rule.

In contrast to ORCP 17 C(4), ORCP 17 C(2) provides that the party or attorney who files a paper certifies that it "is not being presented for any improper purpose[.]" Whether the attorney presented the paper for an improper purpose necessarily has a subjective component, so determining the attorney's purpose or intent is an essential part of deciding whether the attorney violated that rule.

The trial court[4] imposed sanctions on appellant based on its evaluation of her subjective intent in presenting the affidavit: it concluded that she "carefully crafted" the affidavit to be misleading. The court found that the affidavit was designed to lead it to believe that plaintiff had few or no assets and that ORCP 17 "requires a higher degree of candor on the part of an attorney presenting such a document to the Court." Those findings are not relevant to ORCP 17 C(4), the rule under which the court nominally acted, because the only issue under that rule is whether there is evidence to support the assertions in the affidavit. Rather, the findings about appellant's subjective intent are potentially relevant to

558-59, 840 P2d 700 (1992) (applying that approach in reviewing sanctions under ORS 656.390); *Whitaker v. Bank of Newport*, 101 Or App 327, 333, 790 P2d 1170 (1990), *aff'd* 313 Or 450, 836 P2d 695 (1992) (applying that approach in reviewing sanctions under previous version of ORCP 17). The record does not support the finding of a violation in this case, so I do not reach the question of whether the trial court abused its discretion in imposing sanctions.

[4] The judge who ruled on the motion for sanctions was not the same as the judge to whom appellant presented the affidavit. Thus, the court could not rely on its observations in determining appellant's purpose or intent. For that reason the majority is incorrect when it suggests that the trial court's greater experience with the course of the litigation requires us to give greater weight to its evaluation of the affidavit.

ORCP 17 C(2), under which the issue is whether appellant presented the affidavit for an improper purpose. However, the trial court did not rely on ORCP 17 C(2) for its authority to impose sanctions. Even if it had done so, the record does not support its findings concerning appellant's purpose and intent.

Nothing in the affidavit suggests why appellant wrote it in a way that turned out to be ambiguous. The fact of ambiguity, standing by itself, does not suggest the reason for the ambiguity. If anything, the ambiguity in this affidavit appears to be the result of hasty drafting. The simple addition of a comma would have made it clear that the affidavit intended to say that plaintiff had not received any significant amount of money from the trust: "I have never received any significant amount of money, and no money at all for over a year[,] from the Trust[.]" Failing to insert the second comma in these circumstances is a common usage error that does not by itself indicate an intent to mislead. *See* Bryan A. Garner, *A Dictionary of Modern American Usage*, 538 (1998).

The only other potentially relevant evidence concerning appellant's purpose and intent is in the affidavit that she filed in support of her motion that the court reconsider its decision to impose sanctions. In that affidavit, appellant stated:

"In drafting the Affidavit [for plaintiff], I tried to bring out my client's own rationale underlying her belief that she did not have sufficient assets to post a bond. I realize now that my drafting was ambiguous and not as thorough as it should have been. This is probably because I was preparing it under constraints and at the same time as the Petition, Notices and a Motion for Consolidation. Even though I should have been more thorough and careful, I did not intend to mislead the Court. I take my position as an 'Officer of the Court' seriously. I have worked too long and hard over the past twelve years to establish myself with the Clackamas County judges to destroy my reputation over a $500 bonding issue."

Appellant's explanation is inconsistent with and cannot support the trial court's conclusion that she carefully constructed the affidavit in order to mislead the court. There is no other evidence that can support that conclusion. Thus,

there is no foundation for the trial court's apparent finding that appellant violated ORCP 17 C(2) by falsely certifying that she did not act with an improper purpose. The only remaining basis for sanctions is ORCP 17 C(4), which requires that there be no evidence to support the factual assertions in the affidavit. Again, the record does not support the trial court's conclusions in that regard.

ORCP 17 C(4) required appellant to certify that the assertions in the affidavit were supported by evidence, not that they were unequivocally true; such a requirement would make every attorney who lost a case subject to sanctions. Because the affidavit is ambiguous, and because there is evidence to support the factual assertions involved in the first meaning—that plaintiff had never received a significant amount of money from the trust—that meaning is not a subject for sanctions under ORCP 17 C(4). In the absence of any evidence of intent to mislead, it is irrelevant that the second meaning—that plaintiff had never received a significant amount of money from any source—conflicts with plaintiff's recent receipt of money from the sale of a house. Contrary to the majority's apparent assumption, it is not necessary to resolve the ambiguity in the affidavit for the purposes of this appeal of a matter collateral to the purpose to which the affidavit was directed. Although the nature of litigation often requires courts to resolve ambiguities in writings in order to decide disputes between the parties to a lawsuit, the nature of the issues in this appeal do not create such a compulsion.

The majority makes two fundamental mistakes in this regard. First, it does not recognize that there is a question about whether there is any reason to resolve the ambiguity in the affidavit. Second, it accepts the trial court's conclusion on the ground that determining the meaning of an ambiguous writing is an issue of fact for the trial court. The majority thus misunderstands both the nature of a sanction under ORCP 17 and the role of a court in construing a writing.

The trial court and the majority, in effect, make an attorney strictly liable for filing an ambiguous paper if the court decides to resolve the ambiguity in favor of a meaning

that does not have evidentiary support. That creates a significant risk of punishing the attorney for nothing more than poor drafting. It is an unnecessary risk, because there is no reason for a court to resolve the ambiguity. Courts resolve ambiguities in writings in order to decide issues before them to which the writing were relevant. Thus, when party A argues that a contract means "X" and that party B therefore breached it, while B argues that the contract means "Y" and that B therefore did not breach it, the court must decide which construction is correct. Doing so is necessary in order to resolve A's claim for breach of contract. All the rules concerning the construction of writings, such as admitting extrinsic evidence of the parties' intent, reading the writing in accordance with that intent, and using various rules of construction when the court cannot otherwise determine intent, are the result of the imperative to decide the case. They reflect the fact that the court must resolve the dispute and therefore must find some answer, somehow and somewhere. As the use of potentially arbitrary rules of construction suggests, it can be more important that the answer resolve the existing controversy than that it be absolutely correct. *See, e.g.*, ORS 42.210 through ORS 42.300; *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 470-71, 836 P2d 703 (1992) (purpose of rule of construing contract against drafter when all other methods of resolving ambiguity fail is that "the ambiguity cannot be permitted to survive. It must be resolved.").

In contrast, there is no compelling need to resolve the ambiguity in this affidavit. The fact of ambiguity in itself, in the absence of relevant evidence, suggests that any resolution will be difficult and may be incorrect. Letting the ambiguity survive will not affect the dispute between plaintiff and defendants, nor will it otherwise affect their rights in the future. It is also irrelevant to the issue on appeal, which is the trial court's imposition of sanctions. In doing so, the trial court did not focus on the meaning of the affidavit but on appellant's intent in filing it. Although it recognized that the affidavit could have the meaning that appellant suggests, it then used that fact as evidence of misconduct rather than as a reason for finding that there was evidence to support the

affidavit. It forgot that appellant's intent or purpose is not something that is subject to sanctions under ORCP 17 C(4).[5]

The majority apparently believes that we are bound by what it sees as the trial court's decision to resolve the ambiguity, because that is a question of fact for the trial court to decide. The majority forgets that construction of a writing is primarily a question of law, so we review the trial court's decision for errors of law. There is a question of fact only when the writing is ambiguous *and* when there is evidence of the intent of the party or parties who made the writing. In that specific situation, the determination of the author's intent by the trier of fact will control, if there is evidence to support it. *See, e.g., Thompson v. Bolliger, Hampton & Tarlow*, 118 Or App 700, 709, 849 P2d 526 (1993). Here, however, the only relevant evidence of the intent of the drafter or maker of the affidavit is in the later affidavit that appellant filed in response to the original ruling on the motion for sanctions. That evidence directly contradicts any suggestion that appellant intended plaintiff's affidavit to say that she had never received a substantial amount of money from any source. There is simply no factual foundation for the trial court to resolve the ambiguity in the way that the majority suggests. Thus, even assuming that it did so, its decision is not controlling on us.[6]

For these reasons, the trial court did not have the legal authority to impose sanctions on appellant. I dissent from the majority's conclusion to the contrary.

---

[5] Indeed, it appears that the trial court did not so much resolve an ambiguity as assume that appellant intended the meaning that it attributed to her and then use the fact that the affidavit could be read differently as proof of misconduct. That appears to be what the court meant by referring to the affidavit as "carefully crafted." In any event, it is clear, contrary to the majority's assumption, that the court neither saw itself as resolving an ambiguity nor carefully evaluated the relevant evidence. Rather, it decided, despite the evidence, that appellant had acted with an improper purpose and penalized her for that.

[6] The majority also relies on *Taylor v. Kerber*, 171 Or App 301, 15 P3d 93 (2000). However, the issues in *Taylor* involved ORCP 17 C(2) and ORCP 17 C(3), concerning the attorney's purpose and the legal foundation for his actions. In addition, in contrast to this case, in *Taylor* there was ample evidence to support the trial court's conclusions.