Murphy, J.
INTRODUCTION
The plaintiff brought this action to enforce a contract for the sale of real estate and residential dwelling located at 5 Main Street, Marion, Massachusetts (“the property"), and to recover damages arising out of an alleged breach of that contract. This matter is before the court on the defendants’ motion to dismiss. For the reasons set forth below, the defendants’ motion to dismiss is DENIED.
BACKGROUND
In April 2001, the plaintiff and the defendants began discussions concerning the sale of the property. On April 9, 2001, the plaintiff sent an e-mail to the defendants which contained an offer of $2,000,000 for the property. On April 10, 2001, the defendant, David Klotzbach, responded via e-mail by expressing his appreciation for a reasonable offer, and stated that he would be willing to except $2,250,000. The defendant further stated that he and his wife Barbara “have been praying for a man such as [the plaintiffl that would love the property as much as [the defendants] do.” The defendant concluded by stating that e-mail is the “preferred” manner of communication during their negotiations.
*361 On or about April 20, 2001, the plaintiff and the defendants entered into a purchase and sale agreement concerning the property which was signed by all parties. The agreement provided a $2,200,000 purchase price along with other contingencies. The plaintiff furnished the defendants with the deposit which was held in escrow. Prior to the closing, however, the defendants were unable to procure a “wharf license” as called for in the purchase and sale agreement. Accordingly, the parties terminated the April 20 purchase and sale agreement, and the defendants returned the plaintiffs deposit.
Nevertheless, commencing in July 2001, the parties again began communicating via e-mail concerning the sale of the same property. In an e-mail sent July 24, 2001, the plaintiff wrote to the defendant that he was increasing his offer to $1.825 million. The e-mail also addressed various other details such as the defendants’ requests for a closing to take place in less than 30 days and that there be no contingencies.
The defendant, Dave Klotzbach, responded later that day via e-mail stating that he would decrease the price to $2,000,000 as his counter offer. He further stated that if the plaintiff agreed to his counter offer he would ask for “no contingencies that might tie up the property." The defendant specifically stated that any home inspection should take place within 5 days of the signing of the purchase and sale agreement, and there would be no financing contingency. The defendant conceded that “other standard contingencies are fine.”
On August 31, 2001, the defendant again sent an e-mail to the plaintiff which stated that the defendants “still have NOT sold” the property, and “if you are still interested in a clean deal at $1.825 mil [sic] let me know.”
On September 2, 2001, the plaintiff sent the defendants an e-mail that stated he was still interested in doing a “clean deal” for $1,825,000. He asked if he could make a “request” that he be able to perform a “quick walk-through inspection” and if no big flaws were apparent then he would be allowed to sign a simple purchase and sale agreement “containing only the usual boiler plate language, no financing contingency, [and] no other contingencies at all.”
Finally, on September 10, 2001, the plaintiff sent the defendant an e-mail which stated that the plaintiffs attorney had told him there were no complications and the attorney would draft a very standard purchase and sale agreement for $1,825,000 “with no usual contingencies.” The defendant responded the same day by e-mail stating “[o]nce we sign the P&S we’d like to close ASAP. You may have your attorney send the P&S and deposit cheek for 10% of purchase price ($182,500) to my attorney.” The e-mail concluded by stating that “I’m looking forward to closing and seeing you as the owner of ‘5 Main Street,’ the prettiest spot in Marion village.”
All e-mails detailed above contained a salutation at the end which consisted of the type written name of the respective sender.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P 12(b)(6), the court must accept as true the allegations of the complaint, as well as any reasonable inferences to be drawn therefrom in plaintiffs favor. Fairney v. Savrogran Co., 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991) (case citations omitted). “[The] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977). “[A] complaint is not subject to dismissal if it would support relief on any theory of law.” Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979). A complaint need only surmount a minimal hurdle to survive a motion to dismiss for failure to state a claim. Bell v. Mazza, 394 Mass. 176, 184 (1985).
G.L.c. 259, 1 provides that “no action shall be brought. . . upon a contract for the sale of lands . . . unless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therein or by some person thereunto still lawfully authorized.” The defendants contend that there is no signed written memorandum sufficient to satisfy the Statute of Frauds. Specifically, the defendants argue that the e-mails in question were not signed and thus can not satisfy the Statute of Frauds.
Where the defendant pleads the statute of frauds, the burden is on the plaintiff to prove the existence of a memorandum complying with the statute’s requirements. Epsy v. Eely, 349 Mass. 314, 316-17 (1965); Michelson v. Sherman, 310 Mass. 774, 776 (1942). “A memorandum is signed in accordance with the statute of frauds if it is signed by the person to be charged in his own name, or by his initials, or by his Christian name alone, or by a printed, stamped or typewritten signature, if signing in any of these methods he intended to authenticate the paper as his act.” Irving v. Goodimate Co., 320 Mass. 454, 458-59 (1946). Here, all e-mail correspondences between the parties contained a typewritten signature at the end. Taken as a whole, a reasonable trier of fact could conclude that the e-mails sent by the defendant were “signed" with the intent to authenticate the information contained therein as his act.
Moreover, courts have held that a telegram may be a signed writing sufficient to satisfy the statute of frauds. See Providence Granite Co, Inc. v. Josesh Rugo, Inc., 362 Mass. 888, 889 (1972) (“a telegram which was a ‘writing sufficient to indicate that a contract for sale [under G.L.c. 106, 2-201(1)] (had) been made . . . and signed by the party whom enforcement . . . (was) *362 sought' ”); Hansen v. Hill, 340 N.W.2d 8, 13 (Neb. 1983) (intent to authenticate by signature demonstrated by name typed on telegram). This court believes that the typed name at the end of an e-mail is more indicative of a party’s intent to authenticate than that of a telegram as the sender of an e-mail types and sends the message on his own accord and types his own name as he so chooses. In the case at bar, the defendant sent e-mails regarding the sale of the property and intentionally and deliberately typed his name at the end of all such e-mails. A reasonable trier of fact could conclude that the e-mails sent by the defendant regarding the terms of the sale of the property were intended to be authenticated by the defendant’s deliberate choice to type his name at the conclusion of all e-mails.
The defendants further contend that, even if e-mails are capable of satisfying the statute of frauds, the defendants hold title to the property jointly, and thus the signature of both the defendants would be needed. The plaintiff has not alleged that the defendant, Barbara W. Klotzbach, has ever signed any written memoranda sufficient to satisfy the statue of frauds. Nevertheless, the signature of the defendant-husband may also bind the defendant-wife who impliedly gave her consent and acquiescence in the sale of jointly held property. See Tzitzon Realty Co., Inc. v. Mustonen, 352 Mass. 648, 654 (1967). Here, the correspondences suggest that the defendant-wife was aware of the ongoing negotiations concerning the sale of the property. Thus, a reasonable trier of fact could conclude that the defendant-husband’s signature on the memorandum acted as a signature of both defendants for the purpose of satisfying the statute of frauds.
The defendants finally contend that the e-mails, even if sufficiently authenticated, do not contain the essential terms. A memorandum sufficient to satisfy the statute of frauds need not be a formal document intended to serve as a memorandum of the oral contract, but must contain the essential terms of the contract agreed upon: in the case of an interest in real estate, the parties, the locus, the nature of the transaction, and the purchase price. A.B.C. Auto Parts, Inc. v. Morgan, 359 Mass. 327, 329 (1971); Cousbelis v. Alexander, 315 Mass. 729, 730 (1944). Multiple writings relating to the subject matter may be read together in order to satisfy the memorandum requirement so long as the writings, when considered as a single instrument, contain all the material terms of the contract and are authenticated by the signature of the party to be charged. Flynn v. Wallace, 359 Mass. 711, 717 (1971); Waltham Truck Equip. Corp. v. Massachusetts Equip. Co., 7 Mass.App.Ct. 580, 583 (1979). The writings may, but need not, incorporate each other by reference. Tzitzon Realty Co., Inc. v. Mustonen, 352 Mass. 648, 653 (1967).
In the case at bar, the e-mails contain terms for the sale of 5 Main Street, Marion Village, Marion, Massachusetts. The e-mails further refer to a purchase price of $1,825,000 and the defendant explicitly asked the plaintiff to send a “deposit check for 10% of [the] purchase price ($182,500) . . .” Finally, the multiple e-mails demonstrate the parties to the sale, to wit the plaintiff and the defendants. Thus, a reasonable trier of fact could conclude that the parties had formed an agreement as to the essential terms of a land sale contract; the parties, the- locus, the nature of the transaction, and the purchase price.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ motion to dismiss be DENIED.