Wilkins, Douglas H., J.
After hearing on Plaintiffs Emergency Motion for Endorsement of Memorandum of Lis Pendens (“Motion”) on April 30, 2012, at which both Plaintiffs and Defendant were represented by counsel and heard, the Court entered a temporary restraining order, as later extended by the parties. The Court also allowed further briefing. On May 15, 2012, the defendant, Harold Coxall (“Coxall”) submitted his Memorandum in Opposition to Plaintiffs’ Emergency Motion for Endorsement of Memorandum of Lis Pen-dens (“Memorandum”), which included a Special Motion to Dismiss. After review of all written and oral arguments and evidence, the Court ALLOWS the Motion and DENLES the Special Motion to Dismiss.
The Complaint in this case alleges that Coxall owns vacant undeveloped land shown as Lots 2 and 3 on the Plan of Land titled “Plan of Land in Sudbuiy, MA,” prepared by Thomas Dipersio, P.L.S., recorded in the Middlesex South Registry of Deeds as Plan No. 66 of 2010 (“Property”). It also alleges that, through a series of emails, Coxall and the plaintiffs entered into an agreement for the plaintiffs to purchase the Property for $475,000. The parties dispute whether the emails attached to the complaint amount to a written agreement for the purchase of the Property. Coxall denies that the emails reflect an offer and acceptance sufficient to show a present intent to be bound to the purchase and sale. He also denies that the emails constitute a sufficient writing to satisfy the statute of frauds.
I.
The Lis Pendens Statute, G.L.c. 194, §15(b), provides in relevant part:
(b) Any party seeking a memorandum of lis pendens under this section shall commence the underlying proceeding by means of a verified complaint or other complaint as is required under the rules of court to include a certification by the claimant made under the penalties of peijuiy that the complainant has read the complaint, that the facts stated therein are true and that no material facts have been omitted therefrom. The complaint shall name as defendants all owners of record and any party in occupation under a written lease. Upon motion of a party, if the subject matter of the action constitutes a claim of a right to title to real property or the use and occupation thereof or the buildings thereon, a justice of the court in which the action is pending shall make a finding to that effect and endorse the finding upon the memorandum. Notwithstanding the preceding sentence, the court on its own motion may decline to endorse the memorandum of lis pendens, if the court does order the temporary equitable relief as will preserve the status quo pending further proceedings.
The complaint in this case meets the procedural prerequisites of the first two sentences of this section. The plaintiffs have made the necessary motion. They *151 have commenced this action by means of a verified complaint, signed under penalties of perjury by plaintiffs Ian Feldberg and Michael Rogers on April 30, 2012.
The Court finds that the subj ect matter of the action constitutes a claim of a right to title to real properly. In particular, the complaint claims that Coxall must convey title to the Property to the plaintiffs. Despite the dispute over whether a binding, written contract for purchase and sale of the Property exists, there is no question that the “(p)laintiffs seek a declaratory judgment that Coxall is contractually bound to sell the Property to the Plaintiffs on the terms agreed upon.” Complaint, ¶40.
That claim may or may not be valid and may be vulnerable on a motion to dismiss or motion for summary judgment, but those issue are not before the Court on a motion for endorsement of a memorandum of lis pendens.
We reject [defendant’s] argument that, in deciding whether to endorse a memorandum of lis pendens so as to make it properly recordable, a judge must determine that the complaint would survive a motion to dismiss under Mass.R.Civ.P. 12(b)(6) . . .
Rather than stating that the judge must rule whether the complaint states a valid claim, §15 speaks of a finding (presumably of fact) and permits an aggrieved pariy to challenge any finding in the judge’s order, if leave to record the memorandum was obtained ex parte. Section 15 does not state what “finding” a judge properly could make beyond the one the statute recites (“the subject matter of the action constitutes a claim of a right” to an interest in real property). . . The issues are what is “the subject matter of the action,” and does it consist of a claim of a right to title or use and occupation of real property. The question whether the complaint would survive a rule 12(b)(6) motion to dismiss, without leave to amend, and questions concerning the discharge of the memorandum of lis pendens come at a later stage in the proceedings.
With the mandate that the judge “shall” find and endorse, §15 gives little discretion to the judge once the judge determines that the subject matter of the action concerns an interest in real estate.
Sutherland v. Aolean Development Corp., 399 Mass. 36, 40 (1987).
Coxall’s Memorandum does not address this highly restrictive standard. His arguments about the alleged insufficiency of the parties’ email communications to meet the statute of frauds and to show an intent to be bound are substantial and may well prevail. But that is not the test by which the Court must measure the Motion.
While §15 appears to allow the Court discretion to decline to endorse the memorandum of lis pendens if it enters temporary equitable relief that will preserve the status quo, the Court declines to do so in this case. No one has requested that temporary relief extend beyond the time needed to rule on the Motion. As argued at the hearing, the real harm to Coxall would flow from an inability to convey the property to a third party. A temporary equitable order preserving the status quo would inflict at least as much harm upon Coxall as a lis pendens in these circumstances. At least with a lis pendens, Coxall would violate no court order by selling to a third party who decides to consummate the purchase after evaluating this litigation. Moreover, temporary relief would presumably require a finding of likelihood of success. At this stage of the proceedings, a memorandum of Us pendens is the simpler approach and appropriately allows postponing consideration of the merits, including the adequacy of the complaint or likelihood of success, to a later stage.
Accordingly, the Court has endorsed the Memorandum of Lis Pendens.[1] Coxall’s arguments must be decided on the merits at a later stage in this case.
II.
Coxall’s Memorandum also contains a special motion to dismiss the plaintiffs’ Verified Complaint pursuant to G.L.c. 184, § 15(c), which states that the “special motion to dismiss shall be granted if the court finds that the action or claim is frivolous because (1) it is devoid of any reasonable factual support; or (2) it is devoid of any arguable basis in law; or (3) the action or claim is subject to dismissal based on a valid legal defense such as the statute of frauds.” See generally McMann v. McGowan, 71 Mass.App.Ct. 513 (2008).
Coxall argues first that the complaint fails to include all material facts, in violation of the requirement of G.L.c. 184, §15(b) that the complaint include a certification that “no material facts have been omitted therefrom.” “A party’s failure to include all material facts may result in the dismissal of that party’s claims where the omitted facts establish that those claims are devoid of reasonable factual support or arguable basis in law.” McMann, 71 Mass.App.Ct. 719-20 (dismissing case where the complaint misleadingly failed to disclose that a crucial notice was not placed “in hand” as required by the contract, but was left on a desk when no one was in the office); Galipault v. Wash Rock Invs., LLC, 65 Mass.App.Ct 73, 81 (2005).
In this case, the allegedly omitted materials concern preliminary discussions that predated the email exchange claimed to constitute the binding agreement, as well as some later, relatively inconsequential emails that add nothing to the legal or factual analysis. Those documents may be relevant as evidence at trial, but they do not rise to the level of materiality that the statute requires before the Court may allow a special motion to dismiss on this basis. See McMann, 71 Mass.App.Ct. at 520 (A “material fact” is one that is “significant or essential to the issue or matter at hand,” Black’s Law Dictionary 629 (8th ed. 2004)). See Dagan v. Jewish Community Hous. for the Elderly, 45 Mass.App.Ct. 511, 513-14 (1998) (in summary judgment context, a material fact is one that is essential to an element in the plaintiffs case).
*152 On the merits of the special motion to dismiss, Coxall falls short of proving that the plaintiffs’ claims lack any arguable support and basis in fact or law or are subject to dismissal because of a valid defense such as statute of frauds.
The parties do not seriously dispute the legal test to be applied to the plaintiffs’ affirmative case. The question is whether the parties intended to be bound. McCarthy v. Tobin, 429 Mass. 84, 87 (1999). “An enforceable agreement requires (1) terms sufficiently complete and definite, and (2) a present intent of the parties at the time of formation to be bound by those terms.” Targus Group Int'l., Inc. v. Sherman, 76 Mass.App.Ct. 421, 428 (2010). “If. . . the parties have agreed upon all material terms [of the sale], it may be inferred that the purpose of a final document which the parties agree to execute is to serve as a polished memorandum of an already binding contract.” McCarthy, 429 Mass. at 87. The plaintiffs’ legal arguments conform to these legal principles and therefore have an ample basis in law.
The parties do strenuously dispute whether the complaint “is devoid of any reasonable factual support.” G.L.c. 184, §15(c) (emphasis added). For purposes of evaluating that question, the key exchanges are Attorney Vaughn’s email to Coxall and Attorney Lallos dated April 19, 2012 at 8:53 P.M. (“April 19 email”)[2] and Coxall’s response on Friday, April 20, 2012 (“April 20 email”).
The April 19 email attached a “revised offer, with changes to reflect the conversations we have had today.” It reserved the plaintiffs’ “rights to comment on it.” It also suggested that the attorneys work “to have the offer form finalized in time for my clients to sign it and get deposit checks to you before the end of the day tomorrow.” Among other things, the draft attached to the April 19 email contained a purchase price, described the property and called for a closing on or before noon on June 1, 2012. In response, Coxall’s April 20 email contained some initial information on an “fyi” basis, before concluding that: “[w]e must have a written approval letter from the bank today by 5pm and I think we are ready to go (I assume they will provide a closing date with the approval). We are almost there.” Both emails end with what may be described as a standard e-mail “signature block,” showing the author (either Donald E. Vaughan, Bums & Levinson, LLP or N.E. Air, Inc., which was Coxall’s company), followed by street address and phone numbers.
At 2:18 PM on April 20, the plaintiffs’ attorney provided a copy of the commitment letter from the Village Bank. The letter had a number of conditions, including submission of 2011 tax returns, 2012 profit and loss statements and consulting contracts, and a satisfactory appraisal establishing an 80% loan to value ratio. For present purposes, those conditions appear sufficiently within the reasonable expectations of the parties for a commitment letter to be delivered by a bank within such a short time. That is important because of the emphasis Coxall now places upon the requirement in his April 20 email for a bank commitment letter, without specifying what would be acceptable in such a letter. Where the parties have agreed upon terms (such as a commitment letter) but have not defined those terms, the Court infers that they intended a “reasonable” construction of those terms. Cf. Town of Sudbury v. Scott, 439 Mass. 288, (2003) (discussing G.L.c. 61A and common law), citing Stone v. W.E. Aubuchon Co., 29 Mass.App.Ct. 523, 526-27 (1990). The plaintiffs have a basis in fact and law to argue that they complied with the demand for a bank commitment letter, because it was reasonable to expect that any quickly-issued commitment letter would contain some conditions (such as documentation of the representations made in the application). They obtained and provided a letter that contained only reasonable and foreseeable conditions.
Coxall also claims that his April 20 email required a closing date. The email itself was much less definite on this point than Coxall’s Memorandum claims. It contained only the parenthetical: “(I assume they will provide a closing date with the approval).” The plaintiffs have a basis in law and fact to argue that (1) this was a side observation, and not a condition and (2) Coxall’s “assum[ption]” did not relate to a closing date for the sale (which was already included in the plaintiffs’ April 19 draft document), but for the mortgage transaction to which Coxall was not a party.
Coxall (Memo at 8) claims that the “Appeals Court’s ruling in Germagian [v. Berrini, 60 Mass.App.Ct. 456, 459-60 (2004)] is directly on point and controlling.” The Court disagrees. The facts here differ from Germagian in ways that may be material, including, in that case, the purchaser’s post-agreement failure to apply for a mortgage and to seek zoning variances. Considering the parties’ post-offer conduct, Germagian concluded that “the parties intended the offer to be merely a preliminary step,” rather than “a valid, enforceable contract.” Id. at 457-58. Here, there is no such post-offer conduct as might lead a fact-finder to conclude that the parties never intended to be bound. There is only what a fact-finder might conclude was Coxall’s repudiation of the deal. Coxall cites no other case to demonstrate “that the action or claim is frivolous because (1) it is devoid of any reasonable factual support; or (2) it is devoid of any arguable basis in law .. .”
That leaves the question whether the complaint “is frivolous because ... (3) the action or claim is subject to dismissal based on a valid legal defense such as the statute of frauds.” Clause (3) of G.L.c. 184, §15(c) does not contain language similar to the phrases, “devoid of any reasonable . . . support” or “devoid of any arguable basis” in clauses (1) and (2). Different language often signifies a different meaning. See, e.g. Souza v. Board of Appeals of Motor Vehicle Liability Bonds & Policies, SJC No. 11123 (May 17, 2012). However, clause (3) follows the phrase “is frivolous” and therefore must be construed to address situations where the defense is so strong as to render the *153 plaintiffs’ claim frivolous. That construction effectuates the legislature’s intent to provide notice of pending litigation that might result in a judgment for the plaintiff and thereby affect third parties persons dealing with a specific real estate parcel. See Wolfe v. Gormally, 440 Mass. 699, 702-03, 704 (2004). That purpose applies fully to claims that arguably may survive a defense. If notified of such a claim, “a prospective third-parly transferee can, with the exercise of reasonable prudence, acquire information relevant to a decision whether to consummate the transaction.’’ Id., 440 Mass. at 706, quoting Debral Realty, Inc. v. DiChiara, 383 Mass. 559, 562 (1981).
That raises the most difficult legal question in the case: whether an email exchange can satisfy the statute of frauds, G.L.c. 259, §1.[3] Neither side cites conclusive authority on this point. That, by itself, may weigh in favor of denying the special motion to dismiss; the plaintiffs’ response to the defense has an arguable basis as long as they can mount a good faith argument, which is not difficult on this issue of first impression.
Existing authority, such as it is, suggests that the plaintiffs have a plausible position. See Shattuck v. Klotzbach, 14 Mass. L. Rptr. 360 (Super.Ct. 2001) (fact finder “could conclude that the e-mails sent by the defendant were ‘signed’ with the intent to authenticate the information contained therein as his act”). One Appeals Court case mentions the role of an email exchange in a plaintiffs successful opposition to a motion to dismiss based upon a statute of frauds defense in a related federal case, although the Court’s acknowledgement falls well short of a holding (and perhaps falls short of dictum, as well). Munshani v. Signal Lake Venture Fund II, LP, 60 Mass.App.Ct. 714, 715-16 (2004) (“The federal judge concluded that the e-mail sufficed, at least for purposes of a motion to dismiss, to take the case out of the Statute of Frauds”).[4] There is some authority treating, as open, the question whether e-mails, coupled with an unsigned draft agreement, can satisfy the UCC requirement of a signed writing, although the Court in that case found that the particular e-mails from the defendant evidenced no intent to be bound to a contract with the plaintiff. See May Trucking Co. v. Northwest Volvo Trucks, Inc., 238 Or.App. 21, 241 P.3d 727 (2010), review denied, 350 Or. 130, 250 P.3d 922 (2011). The fact that it takes two documents to create a complete contract — or even that the documents “indicated a dispute as to one of the terms of that contract” — is not fatal to a successful opposition to a statute of frauds defense. Waltham Truck Equipment Corp. v. Massachusetts Equipment Company, 7 Mass.App.Ct. 580, 583-84 (1979) (UCC case).
In truth, the Courts have not yet set forth rules of the road for “the intersection between the seventeenth-century statute of frauds and twenty-first century electronic mail.” May Trucking, 241 P.3d at 731. The Uniform Electronic Transactions Act, G.L.c. 110G, is one attempt to do so. It applies “to transactions between parties each of which has agreed to conduct transactions by electronic means.” G.L.c. 110G, §5. Whether the parties have agreed “is determined from the context and surrounding circumstances, including the parties’ conduct.” Id. The parties’ conduct here in using e-mail to conduct the negotiations in this case arguably constitutes an agreement to conduct transactions by electronic means. It is also true that they contemplated a traditional signed, hard-copy offer at the end of their electronic negotiations. That may not be fatal because G.L.c. 110G recognizes that the parties may choose to conduct transactions by electronic means up to a certain point, thereafter switching to hard copy. See G.L.c. 110G, §5(c) (“A party that agrees to conduct a transaction by electronic means may refuse to conduct other transactions by electronic means ...”).
Under G.L.c. 110G, §7(d), “(i]f a law requires a signature, an electronic signature satisfies the law.” An electronic signature is “an electronic . . . symbol or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.” The parties’ email “signature block” may well meet that test. So may the “from” portion of the email. See May Trucking, 238 Or.App. at 738 (noting the issue). All of these possible arguments provide a reasonable and supportable response to the defense of the statute of frauds in this case.
It follows that Coxall has not met his burden on the special motion to dismiss. The letter and purpose of the lis pendens statute dictate endorsement of the memorandum of Us pendens, to notify third parties of pending litigation in which the plaintiffs have a reasonable basis in fact in law for their claim and a non-frivolous response to Coxall’s defense. Any other conclusion would allow “a buyer without notice of the [pending] litigation” to “nonetheless [be] ‘bound by the judgment.’ ” Wolfe, 440 Mass. at 702, quoting J.L. Bennett, Lis Pendens 65 (1887).
ORDER
For the above reasons, the Plaintiffs Emergency Motion for Endorsement of Memorandum of Lis Pen-dens is ALLOWED, the Defendant Harold Coxall’s Special Motion to Dismiss (Docket No. 7) is DENIED.

 Because G.L.c. 184, §15(b) contains no requirement for a finding of good faith, I make no such finding and have deleted the “good faith” language from the draft Memorandum of Lis Pendens submitted by the plaintiffs.

 In adopting this shorthand reference, and the April 20 email reference, the Court has not overlooked the other emails sent on those days.

 In relevant part, the statute provides: “No action shall be brought:... Fourth, Upon a contract for the sale of lands... or of any interest in or concerning them . . . Unless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.”

 The e-mail later proved fraudulent, which presented the “fraud on the court” issues addressed in Munshani